**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,                                    Criminal No. 10-336 JNE/AJB

               Plaintiff,

v.                                                                    **REPORT AND RECOMMENDATION**

JESSE LAMOND JONES,

               Defendant.


      LeeAnn K. Bell, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

      Jordan S. Kushner, Esq., appearing for the defendant, Jesse Lamond Jones.


      This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on February 28, 2011, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.   The Court issued an Order on Motions dated March 1, 2011, reserving defendant's motion to suppress search and seizure evidence [Docket No. 37], motion to suppress statements [Docket No. 38], and motion to dismiss indictment [Docket No. 39], for submission to the district court on report and recommendation.

      Based upon the file and documents contained therein, along with witness testimony, exhibits, and memorandums of counsel, the magistrate judge makes the following:

**Findings**

      St. Cloud Police Officer Daniel Trautman reported to work on the shift commencing at 8:00 a.m. on May 10, 2010, and was subsequently advised that he was assigned to an investigation involving a suspect in several criminal matters.  The suspect was specifically identified as Jesse Jones, the defendant in this action.  The police had received information

indicating that Mr. Jones was possibly located at a trailer home residence at Lot 507 in the

Clover Leaf Trailer Park on Highway 10 in St. Cloud, Minnesota.  Sarah Johnson was the owner

and primary resident of the trailer.  Officers had knowledge that Jones was the subject of an

active felony warrant for parole violation.

Officer Trautman commenced surveillance at the Clover Leaf Trailer Park at

approximately 11:00 a.m. on May 10, 2010.  He maintained observation of the front entry of the

trailer home from an unmarked vehicle parked approximately four trailer lots away, and across

the street from Lot 507.  About 20 minutes after arriving at the scene Officer Trautman saw a

male and a female arrive at the trailer, and approximately 10 minutes thereafter he viewed a man

come out of the trailer and remain outside for 10 minutes during which time he smoked a

cigarette.  The officer identified the person who was smoking as defendant Jesse Jones, and he

then called a supervising lieutenant to advise him of the circumstances.  Additional officers

arrived at the scene at 11:45 a.m., and a police perimeter and road block was established around

the trailer.  The man and woman who had earlier been at Lot 507 were observed to be working

on a car just outside the trailer, and they left the area about a half hour after Mr. Jones went back

inside.  Officer Trautman remained at his same location and continued his surveillance of the

trailer entry.  At 3:15 p.m. a man identified as Santiago came from inside the trailer and was

promptly detained and handcuffed by officers.  Santiago was questioned as to whether anyone

else was inside, and he told officers that there was not.  However, police had maintained

surveillance of both the front and back of the trailer, and Mr. Jones had not been observed

coming out of the residence.  During the surveillance, officers were able to contact Sarah

Johnson and she advised them that there was a loaded handgun inside the trailer.  Johnson told

the officers that she had a 9 millimeter handgun and ammunition in a back bedroom, but that

Jones did not know about the gun.  Johnson later came to the trailer park and used a bull horn in

an effort to persuade Mr. Jones to voluntarily leave the trailer instead of being forcibly removed

by police.  At 4:39 p.m. defendant Jones came out of the trailer and surrendered to officers

without resistance.  He was detained pursuant to the arrest warrant for parole violation and was

handcuffed and placed in a negotiator van at the scene.  Mr. Jones was subsequently transported

to jail after participating in an interview with officers.

        **Search Warrant Application and Execution.**  Meanwhile, as the surveillance at

Lot 507 was being conducted, officers were preparing a warrant application to obtain

authorization to search the trailer residence.  At 4:40 p.m., while the defendant was being

arrested, officers learned that the search warrant had been issued, but was not yet delivered to the

scene (Hrg. Ex. 1).  In consideration of the report that there was a firearm in the trailer, a tactical

team went into the residence at 4:50 p.m. to make certain that no one else was inside (Hrg. Ex.

4).  The tactical team quickly secured the location and officers entered the trailer to execute the

search warrant at 5:00 p.m.[1]

        Benton County District Court Judge John Scherer issued the warrant to search the

location described as 150 Highway 10 North, lot number 507, Saint Cloud, Minnesota, and

including two small sheds, on May 10, 2010.  (Hrg. Ex. 1).  The search warrant identified the

objects of the warrant to be items showing occupancy; any firearms, specifically–a 9 millimeter

handgun; firearms accessories and ammunition; items which might identify victims and

---

[1] Hrg. Ex. 4 is a thumb drive submitted by the defendant which contains a pre-search video recording of inside of the trailer as well as a post-search video recording of the trailer interior.

perpetrators; cell phones, answering machines, and other communications devices and their

contents; clothing containing gunshot residue; and other evidence of crime.  The warrant was

issued on the basis of probable cause contained in the Affidavit of St. Cloud Police Office Anne

Whitson, including a report by an identified person that Jesse Jones was directly involved in a

shooting from a vehicle on May 5, 2010; surveillance information, including the presently

occurring observation of Mr. Jones at the search residence and the contemporary efforts to

negotiate his surrender to police; and the existence of an active Department of Corrections felony

warrant for Mr. Jones' arrest for parole violation.  The search warrant authorized Officer

Trautman to execute the warrant along with Officer Whitson.  The warrant was issued by the

district court judge prior to police entry into the residence for purposes of securing the location

and ensuring that no one was in the trailer.  The subsequent search lasted approximately one

hour.  Items were seized pursuant to the warrant and an inventory was prepared.

**Statements.**  St. Cloud Police Investigator Lucas Dingmann was a participant in

the surveillance of the trailer, and he and Sgt. Janssen conducted a interview with defendant

Jones after he had surrendered.  The recorded and transcribed interview commenced at

approximately 5:00 p.m. (Hrg. Ex. 2 and 2a).  The officers obtained biographical information

regarding Mr. Jones, and Investigator Dingmann gave him the Miranda warning.  The defendant

stated that he understood the advisory and agreed to speak with the officers.  Approximately 22

minutes into the interview the defendant indicated that he needed a lawyer, at which time

questioning ceased.

On May 17, 2010, at approximately 12:30 p.m., Investigator Dingmann went to

the Benton County Jail to speak with defendant Jones.  Dingmann was accompanied by Officer

Trautman and ATF Agent Robert Almgren.  The meeting was requested by the defendant and the

ensuing interview was recorded and transcribed (Hrg. Ex. 3 and 3a).  The <u>Miranda</u> warning was

again read to Mr. Jones, and he again stated that he understood his rights and wanted to speak

with the officers.  Jones expressly acknowledged that he had submitted a kite in which he stated

that he wanted to talk with investigators.  The interview ended at 1:26 p.m.

Based upon the foregoing Findings, the magistrate judge makes the following:

**Conclusions**

**Dismissal of Indictment.**  Dismissal of this action on grounds that the charges

violate provisions of the United States Constitution is not required.  In a pre-hearing

memorandum the defendant argues that federal jurisdiction under the commerce clause is

lacking, and that the offense statute violates the Second Amendment right to keep and bear arms.

With respect to the commerce clause challenge, the Supreme Court held in <u>Scarborough v.</u>

<u>United States</u>, 431 U.S. 563, 567 (1977) that a sufficient nexus between a firearm and commence

can be established by showing that the firearm traveled in interstate commerce.  This holding

was recognized and a challenge to <u>Scarborough</u> was rejected in <u>United States v. Leathers</u>, 354

F.3d 955, 959 (8th Cir. 2004), wherein the court noted its frequent rejection of constitutional

challenges to 18 U.S.C. §922(g)(1), felon in possession of a firearm (citations omitted).  As for

the defendant's Second Amendment argument that the constitutionality of the charge in this case

is placed in question in light of the Supreme Court rejection of a handgun possession statute in

<u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), that position is directly contrary to the

pronouncement that "nothing in [the <u>Heller</u>] opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons . . ."  <u>Id</u> at 626; <u>see</u> <u>United</u>

States v. Irish, 285 Fed. Appx. 326 (unpublished opinion).  The court finds no constitutional

basis for dismissal of the indictment.  The motion should be denied.

      **Search and Seizure.**  Evidence seized pursuant to a warrant to search the location

described as 150 Highway 10 North, lot number 507, Saint Cloud, Minnesota, and including two

small sheds, on May 10, 2010 (Hrg. Ex. 1), was not unlawfully obtained in violation of the

constitutional rights of defendant Jesse Lamond Jones.  The residence search warrant was issued

on May 10, 2010, and was based upon evidence sufficient to establish probable cause as stated in

the Affidavit of St. Cloud Police Office Anne Whitson and as determined by Benton County

District Court Judge John Scherer.  The warrant properly and sufficiently identified the location

of the search and the items to be seized.  Furthermore, the search was not conducted prior to

issuance of the warrant by the court.  The search warrant in this matter was lawfully issued and

executed and there is no requirement for suppression of evidence seized pursuant to the warrant.

      Defendant challenges probable cause for issuance of the search warrant on the

basis of a contention that the only evidence associating himself or the search residence to

criminal activity came from a source whose information was unreliable and uncorroborated, and

that there was no evidence to establish that evidence of crime would be found at the location to

be searched.  Defendant also argues that statement in the warrant application connecting him to

an offense, or evidence of an offense, relates to a shooting that occurred five days earlier and

does not establish grounds for a search at the time the warrant was requested and issued.  The

government notes that the defendant is relying upon law relating to anonymous informants and

that the information source in this instance was identified.  In addition, the warrant application

cites the informant's admission of his own presence at the scene of drive-by shootings and

corroborating evidence of the defendant's presence with the informant at a time proximate to those shootings.

There is probable cause for a search warrant if there is a fair probability, under the totality of circumstances, that evidence will be found at the place to be searched.  United States v. Wallace, 550 F.3d 729, 732 (8th Cir. 2008) (citations omitted).  Reasonable inferences may be drawn from the totality of circumstances in determining whether probable cause to issue a warrant exists.  Id. (citing United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)).  Although the application in this instance does not clearly state the basis for a prior belief that the defendant would be found at the search location, his physical connection to the residence was sufficiently established by direct surveillance, and could also be inferred from an application reference to a background check on the defendant which revealed an active felony warrant from the Department of Corrections.  With respect to defendant's contention that evidence in the warrant application of his involvement in May 5, 2010, shooting incidents was impermissibly stale, the court concludes that the events occurring a mere five days earlier was not stale and the evidence establishes a nexus between the defendant, and crime, and evidence of a crime.  This is particularly the case where firearms are the object of the warrant because people who possess firearms tend to keep them for a long time.  United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008).  While there is a paucity of direct evidence in the warrant application to establish a nexus between the search location and evidence of the multiple shootings that are described in the application, there was sufficient evidence to establish probable cause for the warrant under a totality of circumstances whereby an credible informant stated that Jesse Jones possessed a firearm and was involved in recent shootings; the defendant was the subject of an outstanding

Department of Correction felony warrant; and the defendant was known to be presently inside

the search location and was involved in negotiations for his surrender.

As to defendant's argument that trailer search was commenced before the warrant

had been obtained, testimony at the hearing established that the initial tactical team entry to

secure the residence did not take place until officers were advised that the warrant had been

issued, though it had not been delivered to the scene.  Defendant's fact assertions in this regard

are contrary to credible evidence before the court.

**Good Faith.**  The warrant to search the residence at 150 Highway 10 North, lot

number 507, Saint Cloud, Minnesota, issued on March 10, 2010, was executed by officers

having a objective good faith reliance on the timely existence and validity of the warrant, and the

search was lawful.  There is no evidence that the issuing judge was intentionally or recklessly

misled by false information in an affidavit; there is no suggestion that the judicial role was

completely abandoned by the issuing judge; the indicia of probable cause in the affidavit is not

insignificant; and the warrant is not facially deficient.  United States v. Hessman, 369 F.3d 1016,

1020 (2004)(citing United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984)).  The

search warrant in this matter was lawfully issued and executed and there is no requirement for

suppression of evidence seized pursuant to the warrant.  See also  United States v. Carpenter,

341 F.3d 666, 671,670 (8th Cir. 2003)(affidavit not so lacking in indicia of a nexus between

drugs and residence as to render belief in existence of probable cause entirely unreasonable).

**Statements.**  Defendant Jesse Lamond Jones's statements to officers in interviews

conducted on May 10, 2010, and May 17, 2010, were not unlawfully obtained in violation of his

constitutional rights to remain silent and have counsel present during questioning, and

suppression of the statements is not required.  Mr. Jones was given the Miranda warning prior to

questioning on May 10, 2010.  He waived his rights and agreed to speak with officers.

Ultimately, Jones stated that he needed a lawyer and questioning was halted (Hrg. Ex. 2, page

23).  However, defendant contends that he effectively invoked his right to remain silent at an

earlier time in the interview when he stated "like you just told me anything I [say] can and will

be used against me, right?  So why would I say anything period?" (Hrg. Ex. 2, page 9).  Mr.

Jones asserts that May 10, 2010, statements thereafter should be suppressed.

       The right to remain silent is invoked by the suspect's "'clear, consistent

expression of a desire to remain silent.'" United States v. Ferrer-Montoya, 483 F.3d 565, 569

(8th Cir. 2007) (quoting United States v. Thompson, 866 F.2d 268, 272 (8th Cir. 1989)).

Indirect, ambiguous and equivocal statements or assertions of an intent to exercise the right to

remain silent are insufficient.  Id. (citing United States v. Johnson, 56 F.3d 947, 9559 (8th Cir.

2007)).  Defendant Jesse Jones did not clearly and unequivocally assert his right to remain silent

by merely stating the question as to why he would say anything to officers, and the continuation

of the interview after that time was not a violation the defendant's constitutional right to remain

silent.

       Defendant Jones further contends that the May 17, 2010, interview was initiated

and conducted in violation of his constitutional rights because he previously exercised his right

to counsel, and the government has failed to produce a kite allegedly sent by the defendant in

which he made a request to again speak with police.  A defendant who has asserted his right to

an attorney cannot be subjected to subsequent interrogation unless the defendant himself initiates

further communication and conversations.  United States v. Hull, 419 F.3d 762, 767 (8th Cir.

2005).  Contrary to defendant's position in this instance, there is clear evidence that he himself

initiated the May 17, 2010, contact with police and the ensuing interview.  (Hrg. Ex. 3, page 2).

Also, Mr. Jones was again given the Miranda warning, and he again acknowledged that he

understood his rights prior to further questioning.  Defendant's motion to suppress statements

made in interviews with officers on May 10, 2010, and May 17, 2010, should be denied.

       **Gun Residue Evidence.**  Evidence obtained through swabs for gun shot residue

that were taken in connection with the defendant's arrest was not unlawfully obtained and

suppression is not required.  Defendant Jesse Jones argues that gun shot residue evidence should

be suppressed because it was obtained without search warrant authorization.   By its nature, gun

shot residue evidence, like blood alcohol evidence, is subject to loss or destruction in the absence

of immediate affirmative efforts to preserve the evidence.  Warrantless seizure of such evidence

is lawful when there is probable cause to believe that the evidence will be found and there are

exigent circumstances to support the seizure.  United States v. Eagle, 498 F.3d 885, 892 (8th Cir.

2007)(blood test may be required due to risk of destruction of evidence by dissipation).

Moreover, gunpowder on a suspect's person is subject to removal and destruction, and it is

therefore reasonable to seize such evidence from the person as an incident to the suspect's arrest.

United States v. Johnson, 445 F.3d 793, 795 (5th Cir. 2006).  The gun shot residue evidence was

seized in connection with the defendant's arrest on a Department of Corrections warrant.  In

addition, there was probable cause to believe the evidence would be found on the defendant

based upon informant statements that the defendant had fired a gun within the past few days.

Defendant's motion to suppress gun shot residue evidence should be denied.

       Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes

the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1.  Defendant Jesse Lamond Jones' Motion to Suppress Evidence from Search

and Seizure be **denied**  [Docket No. 37];

2.  Defendant Jesse Lamond Jones' Motion to Suppress Statements be **denied**

[Docket No. 38]; and

3.  Defendant Jesse Lamond Jones' Motion to Dismiss Indictment be **denied**

[Docket No. 39].


Dated:    March 31, 2011


         s/ Arthur J. Boylan
        Arthur J. Boylan
        United States Chief Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before April 15, 2011.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.