UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

                              Criminal No. 10-336 (JNE)
                              Civil No. 14-448 (JNE)
                              ORDER

Jesse Lamond Jones,

        Defendant.

Defendant Jesse Lamond Jones was convicted by a jury of being a felon in possession of a firearm[1] and sentenced by this Court to 300 months of imprisonment followed by five years of supervised release. ECF Nos. 81, 102. Defendant appealed his conviction and his sentence as well as the denial of a pretrial motion to suppress certain evidence. *See United States v. Jones*, 485 Fed. Appx. 848, 849 (8th Cir. 2012). The United States Court of Appeals for the Eighth Circuit affirmed. *Id.* The Supreme Court denied Defendant's petition for a writ of certiorari. ECF No. 128. Defendant timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 131. The motion is presently before the Court. For the reasons stated below, the motion is denied. Because the record conclusively shows that Defendant is not entitled to relief, the Court denies the motion without an evidentiary hearing. *See Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010); 28 U.S.C. § 2255(b).

## BACKGROUND

At trial, the government presented evidence of four shooting incidents in April and May of 2010 in St. Cloud, Minnesota. The first incident occurred on April 23, 2010. In connection with that incident, Angela Hodge testified that she and others were shot at from a rear window of

---

[1] The specific statutory provisions that the indictment charged Defendant with violating are 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

1



a vehicle. Trial Tr. 93-95. Jacqueline Alvarez and Troy Chauvin testified to being in that vehicle with Defendant in the rear passenger seat. *Id.* at 167, 230. Although neither saw Defendant shooting, Alvarez testified to smelling gun powder in the car and to her belief that the shots came from inside the car. *Id.* at 173-75. After the incident, Alvarez drove them all to Sara Johnson's trailer. *Id.* Chauvin testified to seeing Defendant holding and trying to wipe off what Chauvin believed was a gun at Johnson's trailer. *Id.* at 237-38. Alvarez and Chauvin also testified that Defendant warned them not to tell anyone about what had happened, later that night. *Id.* at 176-77, 236-37.

The second incident occurred on May 5, 2010. Hodge testified that a car in which she rode was shot at by a black man, she could not later identify, seated in another car. *Id.* at 101-109. The third and fourth incidents occurred on May 10, 2010. Chauvin testified that he had picked up Defendant from Johnson's trailer in the early morning hours of May 10, 2010, and they drove to the location of the April 23, 2010, shooting. *Id.* at 243-46. Defendant got out of the car and asked Chauvin to drive away a bit and wait. *Id.* at 246. Chauvin then heard gunshots and Defendant soon returned to the car. *Id.* at 247-48. Chauvin testified that it looked like Defendant had a gun under his hoody. *Id.* Chauvin then drove to another location and Defendant again got out of the car after asking Chauvin to wait a few blocks away. *Id.* at 249-50. As he drove away, Chauvin again heard shots being fired. *Id.* at 251. He then continued driving, but was soon pulled over by law enforcement. *Id.* at 252. Sara Johnson testified that Defendant called her at 4 a.m. on May 10, 2010. *Id.* at 445. She picked him up near the area of the later shooting and took him back to her trailer. *Id.*

Defendant was arrested later that day at Johnson's trailer. *See* ECF No. 49 at 2-3. In a search of the trailer at that time, two guns were recovered—a 9 mm Smith and Wesson handgun

and a 9 mm Hi-Point handgun. *Id.* at 3-4; Trial Tr. 71-78. Law enforcement also recovered spent shell casings from the location of each of the four relevant shooting incidents. Trial Tr. 137-38, 203-205, 280-82, 285-95. At trial, the government put on a firearms expert who testified that shell casings retrieved from each of the four locations had been shot from the Hi-Point. *Id.* at 539-59. The government also presented a DNA expert who testified that DNA found on the Hi-Point matched Defendant's DNA. *Id.* at 574-87.

## DISCUSSION

Defendant seeks relief under § 2255, alleging that he received ineffective assistance of counsel. He lists nine specific grounds, which he categorizes as follows: (1) counsel failed to seek to exclude the testimony of the government's firearms examiner (Grounds 1, 2, and 3); (2) counsel failed to adequately investigate and object to the chain of custody of certain exhibits (Ground 4); (3) counsel failed to move to suppress DNA evidence taken from him (Ground 5); (4) counsel failed to obtain a DNA expert for Defendant and to adequately challenge the government's DNA expert (Ground 6); (5) counsel moved to exclude the gunshot residue evidence (Ground 7); (6) counsel failed to challenge whether one of Defendant's prior convictions was a qualifying predicate to make him an armed career criminal for sentencing purposes (Ground 8); and (7) counsel failed to seek a "reliability hearing" for a cooperating witness (Ground 9). *See* ECF No. 135 at 4.

The standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), govern Defendant's claim of ineffective assistance of counsel. *United States v. Kehoe*, 712 F.3d 1251, 1252-53 (8th Cir. 2013). To establish ineffective assistance of counsel under *Strickland*, Defendant must "demonstrate both that counsel's performance was objectively deficient and that he was prejudiced by the deficient performance." *Worthington v. Roper*, 631 F.3d 487, 498 (8th

Cir. 2011). Under the first prong, Defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* A "highly deferential" standard applies to the review of counsel's performance. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and should ensure that "every effort [is] made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The second prong—prejudice—requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Merely showing that the deficient conduct had some conceivable effect on the outcome is not enough. *Worthington*, 631 F.3d at 498. Rather, the required "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

1. <u>Failure to exclude the firearms examiner</u>

Defendant contends that his counsel provided ineffective assistance by not seeking to exclude the testimony of the government's firearms examiner, Kurt Moline. Mr. Moline testified about his examination of the Hi-Point handgun, designated as Exhibit 1 at trial, and various cartridge cases recovered from the scenes of the four relevant shooting incidents. He provided his opinion that certain cartridge cases,[2] which other testimony established were from each of the four sites, were fired from Exhibit 1. Defendant contends that Mr. Moline lacked the requisite expertise and his testimony was unreliable.

---

[2] Mr. Moline provided his opinion that exhibits 17-18, 30-32, 42-43, 46, and 58-60 were shot by Exhibit 1. Trial Tr. 539-43, 558-59.

4

The Court does not find the failure of defense counsel to move to exclude Mr. Moline's testimony objectively unreasonable or prejudicial. At the time of trial, Mr. Moline worked for the Minnesota Bureau of Criminal Apprehension ("BCA") Forensic Science Laboratory. Trial Tr. 518-520. He had three years of in-service training there. *Id.* He also attended training seminars by the Association of Firearms and Tool Mark Examiners; took armors courses for pistols, rifles, revolvers, and shotguns; and completed coursework from the Federal Bureau of Investigation. *Id.* He has testified over 110 times on firearms and tool marks topics. *Id.* Although his undergraduate and graduate degrees were in biology, which the testimony did not establish had direct relevance to his firearms examination, Mr. Moline's experience and training while at the BCA adequately qualified him. *See United States v. Holmes*, 751 F.3d 846, 849-50 (8th Cir. 2014) (confirming that experience developed in the field can satisfy the qualification requirements of Federal Rule of Evidence 702).

Mr. Moline testified systematically about his examination process and the method he used to reach his determinations in a manner that sufficiently established their reliability. Defendant makes two main sets of arguments. One set contends that Mr. Moline discussed the concept of "class characteristics" of the Hi-Point firearm without an adequate factual basis. Mr. Moline's testimony reflects that it was based on his knowledge from working in the field. *See* Trial Tr. 536-37. But more importantly, he discussed the class characteristics in connection with Exhibits 33, 44, and 63—which were bullets and a bullet core—and did not reach any definitive conclusions about those items. *Id.* at 534-37. For his conclusion that the spent cartridge cases retrieved from the relevant sites were fired with the Hi-Point, he compared test fired cartridge cases from the weapon with the retrieved cases, using a comparison microscope, and relied on "individual characteristics" rather than class characteristics. *Id.* at 537-49, 560-61.

The second set of Defendant's arguments are based on his allegation that Mr. Moline's testimony was problematic because there were "two firearms 'couched' under Exhibit one" and counsel did not object. But only a single item, the Hi-Point gun retrieved from Sara Johnson's trailer, was designated as Exhibit 1. Mr. Moline testified that at the time he received Exhibit 1, he also received a 9 mm Smith and Wesson gun. *Id.* at 550-51. That gun was not introduced as an exhibit during his testimony, but Mr. Moline testified that he test fired it and was able to eliminate it as having fired the cartridge cases that he had assessed for the Hi-Point. *Id.* Defendant has not identified any objection that should have been raised but was not in connection with the testimony about the second firearm.

Having reviewed the relevant testimony and Mr. Moline's qualifications, the Court does not find counsel's failure to move to preclude him from testifying unreasonable or prejudicial.

2. Failure to make chain-of-custody objections

Defendant contends that his attorney failed to object to the admission of the various cartridge cases and bullet items on the ground of chain-of-custody deficiencies. As the government's responsive brief lays out with specific cites to the trial transcript, defense counsel did in fact make the objection for each of the items in question.[3] *See* ECF No. 134 at 7-8. Defendant's allegation of ineffective assistance based on a failure to object lacks any basis.[4]

---

[3] Defendant identifies exhibits 17-18, 30-33, 42-44, 46, 58-60, and 63 as the relevant items. ECF No. 135 at 35.

[4] The objections were overruled. After the initial objection, Mr. Moline testified to the usual process of handling evidence and reviewing the chain of custody at the BCA laboratory. Trial Tr. 525-29. Based on the review process, he confirmed that the usual procedures had been followed for the relevant evidence. *Id.*

6

3. Failure to move to suppress DNA evidence

Defendant alleges that counsel should have moved to suppress DNA evidence, because his DNA was taken without a warrant. But his DNA was obtained with a warrant. Trial Tr. 296; ECF No. 134-2. Defendant's argument lacks any basis.

4. Failure to obtain a DNA expert or challenge government's expert

Defendant contends that counsel's performance was deficient because he failed to get a DNA expert, failed to adequately cross-examine the government's DNA expert, and failed to move to exclude the government expert's testimony. Counsel for Defendant filed a declaration in which he attested that he engaged a forensic expert on DNA evidence to review the government's disclosure on the subject. ECF No. 136. Defense counsel also filed information about the expert's credentials and a redacted copy of the expert's itemized invoice. ECF Nos. 136-1, 136-2. Defense counsel consulted with the expert and used the expert's input in formulating defense counsel's cross-examination of the government's expert on DNA matters. ECF No. 136 at 2; *see also* ECF No. 136-2. In light of the evidence of counsel's investigation, his strategic decision not to call an expert on the DNA evidence cannot be said to be objectively deficient or prejudicial. *See Johnston v. Luebbers*, 288 F.3d 1048, 1054-55 (8th Cir. 2002); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (observing that "presentation of testimonial evidence is a matter of trial strategy" and noting that prejudice cannot be shown in the absence of evidence that omitted testimony would have been favorable).

The Court also does not find defense counsel's cross-examination of the government's DNA expert or his failure to seek to prevent her from testifying a valid basis for Defendant's ineffective-assistance-of-counsel claim. Defendant has not identified any specific deficiency with counsel's cross-examination of the government's DNA expert. The Court has reviewed the

relevant testimony and it falls well within the wide range of competent professional assistance. The government's expert was adequately qualified as a forensic scientist in the biology laboratory of the BCA. Trial Tr. 568-70. Her trial testimony also adequately reflects the process that she followed in her investigation and Defendant has not pointed to any deficiency that would have been a basis for exclusion. As such, Defendant is not entitled to a determination of ineffective assistance of counsel based on defense counsel's handling of the DNA evidence in the case.

### 5. Exclusion of gunshot residue report

Defendant contends that his attorney excluded a gunshot residue report that would have been favorable to him. According to the report at issue, gunshot residue was detected in testing of swabs of Defendant's hands. ECF No. 134-1. But the report concluded that "the subject" may have discharged a firearm, been in an environment of gunshot residue, or received the particles from an environmental source. *Id.* Since the report reflected that gunshot residue was found on Defendant's hands, counsel's decision to seek to exclude it cannot be said to be objectively unreasonable. While the report offered a potential innocuous explanation of the residue, it also included a non-innocuous explanation. Counsel's determination that it would be preferable for the jury to not hear about gunshot residue altogether was a strategic decision that cannot be said to be deficient or prejudicial.

### 6. Failure to challenge qualifying prior conviction

Defendant contends that counsel failed to challenge the use of one of his prior convictions as a qualifying offense under the Armed Career Criminal Act ("ACCA"). In connection with sentencing, defense counsel filed a position paper that objected to Defendant's classification under the ACCA, arguing that three of the convictions do not qualify as crimes of

violence or controlled substance crimes and arguing that his status as an armed career criminal needed to be proven to a jury. ECF No. 94 at 3-4. At the sentencing hearing, defense counsel again raised those challenges. ECF No. 112 at 2-6. The Court rejected them. Thus, Defendant's contention that his attorney failed to challenge the designation of him as an armed career criminal lacks any basis.[5]

7. <u>Failure to seek reliability hearing</u>

Defendant's motion lists an alleged failure to seek a reliability hearing for a cooperating witness, but does not provide additional detail. In his lengthy reply to the government's response to his motion, Defendant does not address this item. The Court lacks adequate information on the nature of Defendant's claim of ineffective assistance based on this item to address it further.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Jones's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [Docket No. 131 in Criminal No. 10-336] is DENIED.

2. No certificate of appealability will issue.

---

[5] To the extent Defendant attempts to make a different or more specific argument with the claim in his motion that "movant's state max term on prior conviction was not 10 years," ECF. No. 131 at 14, he also fails to identify any basis for his claim of ineffective assistance. The only predicate crime listed in the indictment for which the 10-year reference in 18 U.S.C. § 924(e) would be relevant is the 2001 charge of a controlled substance crime in the third degree in violation of Minnesota Statute 152.023, subdivision 1(1). *See* ECF Nos. 13, 134-3. The maximum sentence for that crime is 20 years imprisonment. *See* Minn. Stat. 152.023, subd. 3(a). Moreover, at least three other predicate crimes supported the armed career criminal designation. Defendant has not challenged the existence of those convictions. *See* ECF No. 112 at 3. Defendant's present argument, based on the requirement that a qualifying controlled substance offense have a maximum term of imprisonment of ten or more years, cannot succeed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 14, 2014

s/ Joan N. Ericksen

JOAN N. ERICKSEN
United States District Judge